UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:                                              :

                                                  :    Chapter 7

JOSE R. RIVERA,                                     :

                                                  :    Case No. 18-11855 (MEW)

                               Debtor.               :

------------------------------------------------------------x

### DECISION SUSTAINING, IN PART, OBJECTION OF CHAPTER 7 TRUSTEE TO CLAIM OF SACCO & FILLAS, LLP AND REDUCING AND ALLOWING CLAIM

A P P E A R A N C E S :

SACCO & FILLAS, LLP
*Appearing pro se*
By:     Zachary S. Kaplan

TARTER KRINSKY & DROGIN LLP
*Attorneys for Chapter 7 Trustee Robert L. Geltzer*
By:     Robert A. Wolf

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

      The law firm of Sacco & Fillas, LLP ("**S&F**") claims that it holds a lien on certain

settlement proceeds pursuant to the terms of section 475 of the New York Judiciary Law in the

total amount of $36,171.13.  The chapter 7 trustee, Robert L. Geltzer (the "**Trustee**"), has

objected to the claim on various grounds.  For the reasons set forth below, this Court finds S&F

holds a valid lien under section 475 of the New York Judiciary Law and that its claim should be

allowed as a secured claim in the total amount of $26,335.35.

### Background

      In 2009, Jose Rivera retained S&F to represent him in a personal injury lawsuit against

New York City and Karen Wapner (the "**Personal Injury Suit**").  Nine years later, on June 20,

2018, Mr. Rivera filed a chapter 7 bankruptcy petition.  By that time pretrial proceedings had been completed and the Personal Injury Suit was awaiting a trial date.

The Trustee in Mr. Rivera's chapter 7 case did not seek to retain S&F to continue to prosecute the Personal Injury Suit.  Instead, the Trustee asked S&F to turn over its litigation file.  When S&F did not respond the Trustee filed a motion to compel the turnover.  [ECF No. 8.]  S&F then filed a response stating that it did not object, and I entered an order compelling the turnover of the file on October 29, 2018.  [ECF No. 14.]

In the meantime, however, S&F apparently continued (without the Trustee's knowledge) to engage in settlement negotiations with the City of New York.  Those discussions resulted in a tentative agreement, on September 28, 2018, to settle the matter for $90,000.  That agreement was void, because it involved property of the estate and was reached without the participation or approval of the chapter 7 Trustee and without the approval of this Court.  S&F's actions also were unauthorized, because S&F had never been approved as counsel pursuant to the terms of section 327 of the Bankruptcy Code.

The turnover of records did not go so smoothly as it could have; some portions of S&F's files, including electronic notes on an internal case management system, were omitted from the turnover.  The Trustee also was incensed when he learned, in December 2018, that S&F had purportedly agreed to settle the matter in September 2018.  The Trustee filed copies of letters to the New York City Law Department demanding that any settlement proceeds be paid to the Trustee and not to S&F, while at the same time stating an intention to prepare papers seeking approval of the tentative $90,000 settlement on behalf of the Trustee.  [ECF Nos. 21, 22.]

On February 5, 2019, the Trustee filed a Motion for Civil Contempt against S&F [ECF No. 23].  The Trustee alleged:

2

- That prior to the original turnover motion S&F had failed to respond to the Trustee's written inquiries about the Personal Injury Suit on three different occasions;

- That S&F had failed to make a timely and complete transfer of its entire litigation file; and

- That S&F had acted improperly by engaging in unauthorized settlement discussions and failing to advise the Trustee of the same.

S&F responded by contending that the purported settlement had been reached in a state court pre-trial conference that was attended by an attorney who was not personally aware of the bankruptcy filing, and by arguing that most of the portions of its litigation files that had not been turned over were work product materials that were not subject to turnover. [ECF No. 27.]

I held a hearing to consider the Trustee's contempt motion on April 2, 2019. I noted that S&F admittedly had notice and knowledge of the bankruptcy filing and should have made all of its attorneys aware of that fact. I also held that S&F had not objected to the turnover of its entire file (as the Trustee had requested) and that S&F's argument that "work product" materials were exempt from the turnover order therefore was incorrect. However, I questioned the extent to which the conduct of S&F was sufficiently wrongful to warrant a contempt citation, and I further questioned the extent to which S&F's conduct had caused actual damages. I issued an Order after the April 2, 2019 hearing that directed S&F to produce its entire file and that scheduled further proceedings to consider the Trustee's motion for sanctions. [ECF No. 32.]

The Trustee made additional submissions that asked the Court to direct S&F to reimburse the Trustee for attorneys' fees and expenses in the amount of $42,795.11, representing fees and expenses payable to the Trustee's counsel and to Jonathan M. Kashimer, P.C. [ECF No. 33.] However, certain matters were plain from reviewing the accompanying time records:

- The Trustee sought compensation for time spent reviewing the underlying case file and evaluating the Personal Injury Suit, but that work would have been necessary even if S&F had done absolutely nothing wrong; and

- Most of the remainder of the claimed fees were incurred in the course of drafting and pursuing the contempt motion itself.

S&F responded by contending: (1) that it had not acted in bad faith, (2) that the contempt motion was unnecessary, (3) that the Trustee would have reviewed the file anyway and there was no basis for an Order compelling S&F to pay the Trustee's legal fees in connection with that task, and (4) that most of Mr. Kashimer's time charges (ironically) had been incurred before Mr. Kashimer's own retention was sought or approved,

I held a further hearing on June 18, 2019, at which neither party objected to my resolving the matter based on the papers without taking any further evidence. I concluded that S&F had not responded appropriately after being notified of the bankruptcy filing and had not completely complied with my turnover order, but that its conduct was not so wrongful as the Trustee had argued and that the sanctions the Trustee had requested were excessive. I then entered an Order directing S&F to make a payment of $5,000 to partially offset the incremental attorneys' fees incurred by the Trustee as a result of S&F's conduct, and otherwise denied the motion. [ECF No. 37.]

Mr. Kashimer, who was retained as the Trustee's personal injury monitoring counsel on an hourly fee basis [ECF No. 31], later reached a new settlement agreement with the City for $95,000. [ECF No 43-3 ¶ 22.] When the Trustee requested approval of the settlement, S&F objected and filed a cross motion claiming a right to a portion of the settlement proceeds pursuant its fee agreement with Mr. Rivera and pursuant to a charging lien that S&F asserted

under Section 475 of the New York Judiciary Law.  [ECF No. 47.]  Because S&F's objection

was to the disbursement of the settlement proceeds, and not to the merits of the settlement itself,

I approved the $95,000 settlement as it otherwise satisfied the applicable legal standard for the

approval of settlements.  [ECF No. 56.]  I also issued an order that set a deadline for the

submission of claims by any creditor who asserted a lien on all or a portion of the settlement

proceeds, including S&F.  [ECF No. 57.]

### S&F's Claim and the Trustee's Objection

S&F filed a claim against the settlement proceeds. [Claim No. 14.]  Attached to the proof

of claim was a sworn statement representing that Mr. Rivera had retained S&F on August 12,

2009 and had agreed to pay a 33-1/3% contingency fee to S&F plus reimbursement of its costs

and disbursements.  S&F claimed a fee calculated on the basis of the $90,000 settlement that it

had negotiated, and did not claim any fee based on the additional $5,000 that Mr. Kashimer had

obtained in settlement.  S&F sought a total of $36,176.13, which consisted of (i) $9,264.20 in

alleged out-of-pocket expenses, plus (ii) a fee of $26,911.93, representing one-third of the

balance remaining after the $9,264.20 of expenses were deducted from the $90,000 base amount.

The out-of-pocket expenses included $3,220.20 of expenses that were incurred after the filing of

the chapter 7 bankruptcy petition.  They also included postage and copying charges that are not

broken down by date.

On May 4, 2020, the Trustee filed an objection to S&F's claim.  [ECF No. 62.]  The

Trustee made three arguments.

First, the Trustee argued that S&F is not entitled to a lien.  The Trustee argued that the

litigation claim belonged to the estate once the bankruptcy case was filed and that S&F was

never counsel to the estate.  The Trustee also argued that an attorney's lien only attaches to

settlement proceeds deriving from a settlement in "his or her client's favor," and that the

settlement negotiated by Mr. Kashimer was for the benefit of the estate and not Mr. Rivera.  In addition, the Trustee argued that the $95,000 settlement was not negotiated by S&F, but rather by Mr. Kashimer.

Second, the Trustee argued that S&F had been discharged "for cause," and that an attorney who is discharged for cause is not entitled to compensation or a lien.  The Trustee pointed to his prior complaints about S&F's conduct and argued that they warranted a complete denial of the claimed fee.

Third, the Trustee argued that, even if S&F were to be entitled to compensation and to a reimbursement of expenses, the expense reimbursement amount should be reduced from the claimed amount of $9,264.20 to a maximum of $3,447.13, representing the pre-petition expenses that S&F incurred but excluding all postage and copying charges on the ground that there was no way to determine the portions of those charges had been incurred pre-bankruptcy rather than post-bankruptcy.

S&F filed a response on May 15, 2020.  [ECF No. 64.]  S&F argued that its lien attached when it became counsel to Mr. Rivera, and that the lien remained in place when Mr. Rivera's lawsuit became property of the estate.  S&F also argued that it only sought a fee based on the $90,000 settlement that S&F itself had reached, and not based on any additional benefit that Mr. Kashimer had obtained, and that its fee therefore reflected the fair value of S&F's own work.  In addition, S&F argued that the Court had already imposed sanctions for the conduct that the Trustee had found offensive and that it would be improper to reopen that issue and to impose additional sanctions in the form of a denial of the claimed fees and expense reimbursements.

The Trustee filed a reply on May 29, 2020 [ECF No. 70], in which the Trustee sought to distinguish various authorities cited by S&F and continued to argue that S&F's misconduct justified a complete disallowance of its fee claim.

I held oral argument on June 25, 2020. I noted that under applicable New York law S&F's lien had attached to the underlying litigation claim when S&F was originally retained, and that the lien remained in place notwithstanding a decision to retain different counsel. At that point the Trustee's counsel conceded that the lien had attached when the case was filed, and also conceded that there was no authority for the proposition that the lien ended just because the litigation claim had become property of the bankruptcy estate. The Trustee relied instead on his arguments as to S&F's alleged misconduct. Mr. Kashimer also argued that the usual practice in New York, when one counsel replaces another, is that the former counsel receives some share of the total fee that depends on the extent of the work done by the former counsel.

I informed the parties at the Hearing that the real issue appeared to be one that neither the Trustee nor S&F had addressed in their papers, though it was similar to what Mr. Kashimer had stated. The Trustee had argued S&F was entitled to no claim at all because it had been replaced as counsel, and S&F had argued that its lien continued to cover the original one-third percentage fee even if new counsel took over the case. However, the Court had identified a number of New York authorities holding that when an attorney has been replaced by another counsel, the original attorney's lien remains in place, but only for the "reasonable value" of that attorney's services and not necessarily for the original agreed percentage recovery. *See Ellis v. Mitchell*, 85 N.Y.S.2d 398 (Sup. Ct., NY Cnty. 1948), *aff'd*, 88 N.Y.S.2d 903 (1st Dep't 1949) (mem.); *Kodenski v. Baruch Oil Corp.*, 161 N.Y.S.2d 301 (Sup. Ct. NY Cnty. 1957); *Application of Grossgold*, 167 N.Y.S.2d 72 (Sup. Ct. Queens Cnty. 1957). Since neither party had addressed

7

these decisions, I directed them to make further submissions. I also directed S&F to include any additional information it thought I should consider in measuring the value of the services it provided.

In its supplemental submission [ECF No. 73], S&F argued that it is entitled to its contractual fee because it performed the lion's share of the work in litigating and settling the Personal Injury Suit. At the same time, S&F acknowledged that legal authority exists for decreasing its fee award to one-quarter of the settlement amount. S&F also argued that it had spent more than 150 hours on the case, and that at a rate of $300 per hour its compensation would be at least $45,000, which would be higher than the contingent fee that S&F sought.

The Trustee contended in his supplemental submission [ECF No. 76] that S&F should only be entitled to a fee computed on a *quantum meruit* basis and that there should be no such recovery due to the absence of any time records, the fact that Mr. Kashimer (not S&F) obtained the final settlement agreement, and due to S&F's alleged misconduct. The Trustee also sought to raise a number of new issues that did not appear in the Trustee's original objection and that were beyond the scope of the additional briefing that the Court had directed; these are discussed in Part III, below.

### Discussion

S&F has filed a proof of claim for its fees and expense reimbursements and it contends that the claim should be treated as a secured claim. The Trustee's objection is to both the amount of the claim and its secured status. The objection creates a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure and provides this Court with jurisdiction to resolve both the amount of the claim and the amount and validity of any lien that secures it. *See* 11 U.S.C. § 502; Fed. R. Bankr. P. 3007, 9014.

Section 475 of the New York Judiciary Law provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

*See* N.Y. Judiciary Law § 475. It is plain from the language of section 475 that the attorney's lien attaches "[f]rom the commencement" of the relevant action, which in this case occurred many years prior to Mr. Rivera's bankruptcy case. *See also In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr. S.D.N.Y. 1980) (the lien attaches by operation of law to the cause of action when commenced and to the judgment or final order when it is rendered). The statute also states explicitly that the lien attaches to the cause of action itself and to the proceeds thereof, "in whatever hands they may come."

As a general matter a bankruptcy filing does not terminate liens on property. Instead, a bankruptcy estate includes a debtor's property interests subject to whatever perfected liens and security interests exist. *See* 11 U.S.C. § 541. If a litigation claim is subject to a lien under section 475, then a bankruptcy estate takes the claim subject to that lien. *See, e.g.*, *In re Bodine*, 190 B.R. 759, 762 (S.D.N.Y. 1996) ("[s]ince the lien is in effect at the time the services begin, the bankrupt's estate takes the judgment subject to such lien"); *In re 9 Stevens Café, Inc.*, 161 B.R. 96, 98 (Bankr. S.D.N.Y. 1993) ("The lien takes effect from the time the services were commenced, and a trustee in a subsequent bankruptcy case involving the client takes the property or fund for the estate subject to such lien"); *In re Tarricone, Inc.*, 76 B.R. 53, 56 (Bankr.

9

S.D.N.Y. 1987) ("[t]he fact that bankruptcy may have intervened . . . is not significant because the charging lien relates back to the initiation of the action").  The lien is enforceable in a bankruptcy case to the extent provided in state law, unless a provision of the Bankruptcy Code explicitly provides for a contrary result.  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 450-54 (2007) (holding that state law governs the allowance of a claim and a lien in bankruptcy unless the Bankruptcy Code explicitly disallows it).

A retained attorney often is replaced by other counsel, but under New York law that replacement does not terminate the original attorney's lien under section 475.  Instead, the original attorney retains a lien for the "reasonable value" of the services that the attorney provided. *Ellis*, 85 N.Y.S.2d 398; *Kodenski*, 161 N.Y.S.2d 301; *Grossgold*, 167 N.Y.S.2d 72; *Paulsen v Halpin*, 427 N.Y.S.2d 333, 335 (4th Dep't 1980).  That "reasonable value" may represent a percentage recovery (to be determined after the conclusion of the litigation), but it does not have to be the original contractual percentage.  *Paolillo v. Am. Exp. Isbrandtsen Lines, Inc.*, 305 F. Supp. 250 (S.D.N.Y. 1969); *Antaya v. Majett*, 12 Misc. 2d 585 (1958).  In the absence of an agreement on a percentage recovery the former attorney retains a charging lien, and the value of services may be determined by the Court at the conclusion of the case.  *Id.*  The relevant factors to consider "include the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)."  *In re Emanuel*, 422 B.R. 443, 449 (Bankr. S.D.N.Y. 2009), *aff'd sub nom, Heller v. Emanuel (In re Emanuel)*, 450 B.R. 1 (S.D.N.Y. 2011), *aff'd* 460 F. App'x 48 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 131 (2012).

I will evaluate each of the Trustee's objections in light of these principles.

## I.    S&F Retained A Charging Lien

The Trustee's argument that the lien did not attach to the settlement proceeds, on the theory that following the bankruptcy filing the claim was owned by the estate (not by Mr. Rivera), is without any identified support in the case law and is contrary to all known authority. The lien was already in place long before the bankruptcy filing occurred.  The bankruptcy filing did not terminate the lien, any more than a bankruptcy filing would have terminated any other valid lien on property that becomes property of an estate.

S&F was replaced as counsel, but under the authorities cited above that replacement did not terminate S&F's lien or its right to reasonable compensation.  The fact that replacement counsel negotiated the final settlement terms may be relevant in assessing the amount of compensation to which S&F is entitled, but it did not vitiate S&F's rights in their entirety, as the Trustee originally contended.

## II.    S&F's Alleged Misconduct Does Not Warrant a Denial of Fees

There is also no basis for the Trustee's contention that he terminated S&F "for cause" and that this termination ended S&F's lien.  S&F's retention as counsel ended when the bankruptcy petition was filed and when the Trustee elected not to continue the retention of S&F. That decision was made before any of the misconduct that has been alleged.  In any event, the actions of S&F would not have justified a "for cause" termination of a kind that would have warranted a denial of compensation.

I have already fully considered the Trustee's arguments about S&F's alleged misconduct in connection with the Trustee's prior motion to impose contempt sanctions, and I have already awarded the sanctions that I determined were warranted.  I noted on the record, at the contempt hearing, that the Trustee's reactions (and the funds spent on the contempt proceedings) were excessive in light of what had actually occurred.  The post-petition settlement discussions that

S&F conducted were unauthorized, but they did not impose any agreements on the estate and did

not prejudice anyone.  The delays in turning over portions of the litigation file were careless, but

while the delays plainly irritated the Trustee they ultimately did not prejudice the Trustee in any

way.

To the extent that the Trustee's counsel was required to do some additional legal work by

reason of S&F's conduct, I awarded a sanction that I determined to be appropriate in connection

with the contempt motion.  None of the alleged misconduct warrants a denial of compensation

for S&F's prior work, or any sanctions other than those that I have already imposed.

### III.    The Trustee's New Arguments Must Be Disregarded

The Trustee's supplemental briefing raises new issues that I did not authorize and that

were beyond the scope of the briefing that I requested.  Among these are the allegation that in

2015, S&F failed to obtain a default judgment against a co-defendant.  The Trustee also argues,

based on unproven allegations, that S&F falsified an affidavit that addressed whether Mr. Rivera

had ever applied for disability benefits.  The Trustee also contended that S&F's claim should be

equitably subordinated pursuant to section 510(c)(1) of the Bankruptcy Code.  Not one of these

issues was raised in the Trustee's original objection.

If the Trustee wished to pursue such contentions he should have incorporated them in the

original objection.  The issues were closed when the hearing was conducted with the limited

exception of the issues for which I directed additional briefing.  I will not consider issues raised

for the first time after oral argument in supplemental briefing that was supposed to address only a

different and much narrower issue.  *Freidus v. ING Groep, N.V.*, 543 F. App'x 92, 93 n.1 (2d Cir.

2013) (declining to consider arguments raised in supplemental briefing that appellant failed to

raise in his initial brief); *Cesar v. Barr*, 779 F. App'x. 824, 825 (2d Cir. 2019) (declining to

consider issues first raised in post-argument supplemental briefing); *Rowley v. City of New York*,

No. 00 Civ. 1793, (DAB), 2005 U.S. Dist. LEXIS 22241, *13, 2005 WL 2429514 (S.D.N.Y.

Sept 30, 2005) (and cases cited therein) ("[The United States Court of Appeals for the Second

Circuit] has made clear it disfavors new issues being raised in reply papers"); *ResCap Liq'g*

*Trust v. Liebert Corp. (In re Residential Capital, LLC)*, No. 12-12020 (MG), 2015 Bankr. LEXIS

1820 at *27 n. 8 (Bankr. S.D.N.Y. June 2, 2015) (refusing to consider arguments raised for first

time in reply).

## IV.    The Expense Reimbursements Should be Reduced

S&F was never retained under section 327 of the Bankruptcy Code and it therefore had

no authority to provide legal services after the filing of the bankruptcy petition.  Any expenses

that it incurred post-bankruptcy were unauthorized and improper and S&F is not entitled to

reimbursement for them.  The $3,220.20 of expenses that were admittedly incurred post-

bankruptcy therefore are disallowed.

It is obvious that at least some portion of the postage and copying charges must have

been incurred before the bankruptcy case, as all of the pretrial proceedings were completed

before the bankruptcy filing occurred.  However, in response to the Trustee's objection S&F

provided no further backup for these charges and offered no guidance as to how a reasonable

apportionment might be made.  In fact, S&F's response to the objection was silent as to these

expenses.  I will therefore disallow them.

## V.    S&F's Reasonable Fee

The case law clearly holds that S&F is entitled to a lien for the "reasonable" value of the

services that it provided.  S&F and the Trustee disagree as to the extent of S&F's contribution to

the successful resolution of the Personal Injury Suit, but in a number of respects the Trustee's

position simply ignores the uncontroverted facts.

13

S&F's pre-bankruptcy representation of Mr. Rivera in connection with the Personal Injury Suit spanned approximately nine years, from 2009 to 2018.  The pre-bankruptcy work included the following:

- investigative and legal research;

- the conduct of document and deposition discovery;

- more than thirty documented court appearances;

- the preparation of pleadings, motions, and related affirmations;

- the procurement and review of medical records and coordination with treating physicians; and

- trial preparation.

[ECF No. 47 and supporting exhibits].  The record shows clearly that the City of New York was ready to settle the claim, based on S&F's work (and based on no involvement by the Trustee or Mr. Kashimer), in the amount of $90,000.

The Trustee argues that the most important work was done by the Trustee and by Mr. Kashimer because they obtained the final settlement agreement with the City of New York.  But the Trustee's papers show only that the Trustee and Mr. Kashimer did the following:

- They reviewed the S&F case file;

- They drafted correspondence to the City's attorneys to explain that the settlement negotiated by S&F was unauthorized; and

- The renegotiated a settlement for $95,000.

The Trustee's briefing also indicates that he will be required to deliver several additional documents as prerequisites to the City's delivery of the $95,000 settlement.

14

It is clear from the papers submitted that while S&F did not conclude the matter prior to the bankruptcy filing, its pre-bankruptcy contributions undoubtedly represent the lion's share of the work that contributed to a successful resolution of the case. I am not persuaded by the Trustee's argument that S&F was completely ineffective in reaching an ultimate resolution. That argument marginalizes, without justification, nine years of work done by S&F.

On the other hand, I will not treat the $90,000 unauthorized settlement that S&F negotiated post-bankruptcy as a legitimate measure of the value of S&F's pre-bankruptcy services. The case was not settled before the bankruptcy filing and S&F has offered no evidence that it had made significant settlement progress prior to bankruptcy. Giving S&F its original agreed contingency fee based on its unauthorized post-bankruptcy settlement work would have the effect of compensating a firm whose retention was never approved, and it would be contrary to the requirements of sections 327 and 330 of the Bankruptcy Code.

Accordingly, I conclude that S&F holds a lien for its pre-bankruptcy work on a *quantum meruit* basis that is properly measured as a percentage of the final settlement, with such percentage to be based on S&F's proportionate share of the work that contributed to the successful outcome of the case. Based on my review of the record, and after considering the difficulty of prosecuting the Personal Injury Suit, the nature and extent of the services provided by S&F, the Trustee and Mr. Kashimer, the relative amounts of time reasonably expended on those services, the quality and qualifications of counsel, the amount at issue, and the resulting $95,000 settlement, I find that S&F is entitled to a lien equal to twenty-five percent of the net settlement amount remaining after the reimbursement of S&F's allowable expenses. S&F's allowable pre-bankruptcy disbursements total $3,447.13, so S&F is entitled to fees equal to a

15

quarter of the remaining $91,552.87, or $22,888.22.  The aggregate fee and expense

reimbursement to which S&F is entitled is therefore $26,335.35.

Accordingly, I will sustain, in part, the Trustee's objection to Claim No. 14, and I will

reduce and allow Claim No. 14 as a secured claim in the amount of $26,335.35.

Dated: New York, New York
       August 26, 2020

**s/Michael E. Wiles**
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE